## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT, BROOKLYN, NEW YORK

| | |
|---|---|
| **JAMAL A. AZEEZ**<br><br>                    *Plaintiff*<br><br>-against-<br><br>**THE CITY OF NEW YORK,**<br><br>and<br><br>**WILLIAM J. BRATTON**, in his official capacity as the Commissioner of the NYPD,<br><br>and<br><br>**BRETT STRAUSS**, Police Officer, Shield #7360, in his individual and official capacity.<br><br>                    *Defendants* | ORIGINAL<br><br>Civil Action: <u>**1:16-CV-00342**</u><br>**(NGG)(MDG)**<br><br>**FIRST AMENDED COMPLAINT**<br><br>~~(JURY~~ TRIAL DEMANDED)<br><br>|

## INTRODUCTORY STATEMENT

1. This is a Civil Rights Complaint filed by Plaintiff Jamal A. Azeez for declaratory judgment and money damages. Plaintiff alleges that the above-named defendants, through their individual and collective acts, practices, omissions, and acting under color of laws have violated clearly established rights by falsely and unlawfully accused, charged and convicted him in violation of the Fifth, Sixth, Eight, and Fourteenth Amendments of the United States Constitution. Plaintiff also alleges that the said defendants committed state tort acts by abuse of authority, abuse of process, and malicious prosecution.

2. This is action is also for damages sustained by a citizen of the United States caused by a <u>Police Officer</u> of the City of New York Police Department who unlawfully discriminated against Plaintiff on the basis of his foreign ethnicity, color, religion, and/or race; retaliated, prosecuted and harassed him. Also

1

against the Police Commissioner as the supervisory officer responsible for the conduct of said police officer and for his failure to take corrective action with respect to police personnel whose vicious propensities were notorious, to assure proper training and supervision of the personnel, or to implement meaningful procedures to discourage lawless official conduct. And also, against the City of New York as the employer of the police personnel, which is sued as a person under 42 U.S.C. Section 1983.

## JURISDICTION AND VENUE

3. Federal question jurisdiction is founded upon 28 U.S.C.A Sections 1983, 1331 and 1343.

4. Pendent and supplemental jurisdiction is founded upon 28 U.S.C.A. Section 1367 for this Court to decide claims that may arise under state law.

5. Venue is proper under 28 U.S.C.A. Section 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## PARTIES

6. Plaintiff Jamal A. Azeez is at all times relevant to this complaint was residing in the City of New York, County of Queens, and a former resident of Nassau County, State of New York. His mailing address is 138-19 Lloyd Rd. Jamaica, New York 11435.

7. Defendant City of New York is a municipal entity created as authorized under the laws of the State of New York. It is authorized by law to maintain a Police Department (NYPD) which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant City of New York assumes the risks incidental to it and to the maintenance of a police force and the employment of police officers and other law enforcement officials, employees, and agents, and said risks attached to the public consumers of the services provided by the NYPD

8. Defendant William J. Bratton is and was at all times herein mentioned is the NYPD's Commissioner. He is appointed by the Mayor and is the Chief Executive Officer of the NYPD. Among other duties, Commissioner Bratton is responsible for the actions and policies of the NYPD, and for the execution of all the laws, rules, and regulations of the laws and the rules and regulations of the State, City, and the NYPD. He is sued in his official capacity.

9. Defendant Police Officer Brett Strauss, Shield Number 7360, is and was an officer, employee and/or agent of the NYPD. He is sued in his official and individual capacities. At all times relevant, Defendant Strauss was acting under color of state law in the course and scope of his duties and functions as an officer, employee, and/or agent of the NYPD and the City of New York, and otherwise performed and engaged in conduct incidental to the performance of his lawful functions in the course of his duties. He was acting for and on

behalf of the City of New York and of the NYPD, with the power of authority vested in him as an officer, or employee and/or agent of the NYPD and incidental to the laws and lawful pursuit of his duties as an officer, employee and/or agent of the NYPD.

### NOTICE OF CLAIM.

10. Heretofore and on January 15, 2015, Plaintiff caused a written Verified Notice of Claim to be filed with, and served upon, the City's Office of the Comptroller and Law Department pursuant to the statutes in such cases made and provided. A copy of said Verified Notice of Claim is annexed to the original complaint.
11. That more than 30 days have elapsed since the service of such Notice of Claim, and the adjustment or payment thereof has been neglected or refused.

### JURY DEMAND

12. Plaintiff demands a trial by jury in this action on each and every one of his claims.

### FACTUAL ALLEGATIONS

13. Plaintiff is a colored, foreign-born citizen, a practicing Muslim, with a BS, MT degree, a medical degree (MD), a US Army veteran (Nuclear, Biological, and Chemical Warfare Specialist (1976-1984) trained partially at West Point Academy, received a commendation medal for meritorious service from the late Gov. Mario Cuomo as a National Guardsman for securing a prison during an uprise, a NYPD Auxiliary Officer, etc., who has never had a traffic violation ticket issued by any law enforcement official after driving for over **40 years**.
14. On a prior day in September of 2013, (exact date unknown) Plaintiff was driving East on Atlantic Ave with his fiancé after an Islamic function at the Jama Masjid located at 94-17 102nd Street, Ozone Park, NY 11416. Plaintiff and his finance at this time were dressed in traditional religious clothing of a type that would signify to the average person that they are practicing Muslim
15. As Plaintiff was in the process of making a right turn going Southbound on Van Wyck Expressway service lane, a police cruiser suddenly appeared, driving at a very high speed, going Northbound against traffic, and nearly collided with Plaintiff's vehicle.
16. Upon information and belief, said police cruiser was in pursuit of another motorist travelling Eastbound on Atlantic Ave. The cruiser had flashing lights but no siren. Plaintiff is not aware of the reason the other motorist was being chased.
17. Plaintiff was extremely startled and terrified by this near head-on collision.
18. Still shaking, Plaintiff decided to follow the police cruiser to confront the officer about his driving, which was considered to be reckless, unlawful, and very dangerous.

3

19. Shortly thereafter, Plaintiff spotted said police cruiser, with the flashing light, parked on 94th Avenue; which is the continuation East on Atlantic Ave.
20. Plaintiff waited until the officer completed his business with the other motorists and approached him.
21. Plaintiff then complained that the reckless driving of the cruiser had nearly collided with plaintiff's vehicle while driving at a very high speed and could have killed him and/or his fiancé. The officer responded, *"Didn't you see the flashing lights?* Plaintiff responded, *"Not until I turned and nearly crashed into you"*
22. The officer was at this time not wearing a name tag or badge. Plaintiff **asked the officer** for his name and badge number and the officer asked, *"Why"*?
23. Plaintiff told the officer that he wanted to file a complaint and the officer immediately replied, *"It would not be the first or last"*.
24. Plaintiff **again asked the officer** for his name and shield number. At this time the officer disrespectfully walked away, and with his back turned, mumbled something under his breath that was inaudible.
25. Plaintiff again, **for the third time, asked the officer** for his name and badge number.
26. Leaving Plaintiff standing and completely ignored with pen and paper in his hand, the officer entered his cruiser and immediately drove off.
27. Consequently, not only Plaintiff was unable to obtain the officer's name, Plaintiff was unable to file a complaint with the Civilian Complaint Review Board.
28. On or about October 12, 2013, Plaintiff was again driving Eastbound on Atlantic Avenue and approaching the same intersection at Van Wyck Expressway where the near head-on collision occurred. Plaintiff again was dressed in traditional religious clothing of a type that would signify to the average person that Plaintiff is a practicing Muslim
29. As Plaintiff was making the same right turn, after passing the white cross-walk lines, the traffic light turned from green to yellow. But as Plaintiff attempted to complete his right turn onto Van Wyck Expressway service lane, he had to come to a mandatory stop because a pedestrian was crossing the road.
30. Plaintiff's car was, for the most part, facing east while the front of it was turned south.
31. At this time, Plaintiff noticed a police cruiser parked in the BP gas station parking lot and the officer was looking directly at Plaintiff's car; the same little red car that nearly collided with a cruiser a little over week ago.

4

32. While Plaintiff was allowing the pedestrian to cross, the yellow light turned red and Plaintiff wait for approximately three seconds until the pedestrian completely crossed the road.
33. Plaintiff then completed his **full** right turn and proceeded two blocks on the service lane **before** entering the entrance ramp to the Van Wyck Expressway.
34. As Plaintiff was about to merge onto the Expressway, the police cruiser appeared behind with flashing lights and pulled Plaintiff over.
35. After the officer demanded Plaintiff's driver's license and registration, Plaintiff asked the officer for the reason for the stop and the officer stated, *"You ran the red light, it was more than 3 seconds"*.
36. While getting the driver's license and registration, Plaintiff recognized the officer and said, *"Oh, you are the officer who I confronted last week...Officer, I did not run the light. I had to stop and wait until the pedestrian cross the road.....I couldn't back up....cars were behind me..."* The Officer said, *"Stop arguing...tell that to the Judge...let me have your driver's license and registration.* Plaintiff then told the officer, *"I will file a complaint against you for retaliation"*. The officer responded, *"It wouldn't be the first or the last"*, and walked away.
37. Upon receiving a traffic ticket, (No. AAW7024533) Plaintiff was again unable to file a complaint since the officer failed to print his name on the ticket as the law requires. Additionally, his signature and Precinct No. were illegible, and the Plate No. was incorrect.
38. Plaintiff pled not guilty to the violation alleged on the ticket and trial was set for October 14, 2014 which was held at the 168-35 Rockaway Boulevard. Jamaica, NY 11434.
39. Prior to the start of the trial, Plaintiff had multiple conversations with other individuals who were predominantly of either foreign in origin or minority in the City of New York. They all complained about the officer's rude and arrogant attitude after they were stopped.
40. It was at the start of the trial Plaintiff first became aware of the officer's name that is named in this complaint as Defendant Brett Strauss.
41. The prosecution sole evidence at trial consisted of Officer Strauss's testimony read from his notes, not from his recollection.
42. Prior to presenting the information regarding the red light violation, Plaintiff attempted to inform the court of the previous encounter with Officer Strauss regarding the near head-on collision, but the Judge stopped further questioning being *'irrelevant'*.
43. Officer Strauss testified that he *'couldn't remember the incident'*, but testified that he indeed told Plaintiff, *"It wouldn't be the first or the last."*

44. After Plaintiff presented his credentials as seen in paragraph #12 above, Officer Strauss downplayed them and rudely stated, *"He must not have learned anything from the rules...he broke"*.
45. As part of Plaintiff's defense, Plaintiff testified that Officer Strauss **was not parked** on Van Wyck Expressway service lane as he stated, but was in fact, parked in the BP gas station parking lot; which was the reason for pulling Plaintiff over when merging onto the freeway.
46. Plaintiff further argued in his defense that if Officer Strauss had truly been parked on Van Wyck Expressway, and if he was telling the truth, he would have been able to pull Plaintiff over **immediately after** Plaintiff completed the right turn.
47. The trial judge was very unsympathetic to Plaintiff's testimony regarding Officer Strauss's untruthfulness and cautioned Plaintiff against *'accusing a police officer of perjury'*, and ultimately found Plaintiff guilty of the traffic violation.
48. Plaintiff paid a **fine of $238.00 plus removal of three points** and appealed the verdict without the transcripts. The Appeal Board refused to hear the appeal without the transcripts.
49. On October 24, 2015, a little over one week after trial first. Plaintiff was again driving East on Atlantic Avenue after having attended religious services at the Jama Mosque. Plaintiff, his fiancé, and the Imam were at this time dressed in traditional religious clothing of the type that would signify to the average person that they are practicing Muslim.
50. At or near the intersection of 109 Street and Atlantic Avenue, Plaintiff spotted a police cruiser on the westbound side of Atlantic Avenue.
51. After Plaintiff crossed the intersection at 111 Street and continued driving Eastbound, he noticed a police cruiser with flashing lights behind three cars racing in the same direction as Plaintiff.
52. It is believed that upon recognizing Plaintiff's vehicle, Defendant Strauss made a sudden U-turn on to the eastbound side of Atlantic Avenue and gave chase.
53. Defendant Strauss then passed three cars and four blocks before pulling Plaintiff at the intersection of 115 Street, as he openly testified.
54. With his hand on his pistol, Defendant Strauss approached Plaintiff and said, *"Oh, it's you again"*, before demanding driver's license and registration.
55. Plaintiff asked, *"Officer, what did I do?"* Defendant Strauss responded by stating, *"You ran the red light again"*. Since there are no lights between 111 and 115 Streets, Plaintiff asked, *"Which red light? There are no red lights behind me"*.

56. Defendant Strauss replied, *"Stop arguing and give me your driver's license and registration"*.
57. While getting the documents, Plaintiff told Defendant Strauss that this *"type of harassment needs to stop"* and that he *will file a retaliation complaint*. Defendant Strauss, for the fourth time, proudly replied, *"It wouldn't be the first or the last"*.
58. Defendant Strauss later issued Plaintiff a traffic violation (Ticket (No. AAY4002552) and said, *"Have a nice day"*.
59. On or about December 20, 2014, Plaintiff filed a "COMPLAINT ALLEGING POLICE RETALIATION, FALSE CHARGES, RACIAL PROFILING, AND DISCRIMINATION" with the CCRB against Defendant Strauss, but was subsequently dismissed for *'lack of jurisdiction'*.
60. Plaintiff then posted his case on the Internet and was soon contacted by a lawyer named Mr. Geoffrey Schotter.
61. Plaintiff thereafter retained Mr. Schotter who agreed to file a Notice of Claim against the City of New York, *inter alia*, and represent Plaintiff at trial for the second ticket; which was scheduled for July 21, 2015.
62. Surprisingly, Mr. Schotter met Plaintiff for the first time on the day of trial to discuss the case and took notes for the first time even though much of the information was revealed during a hearing conducted by an attorney for the City of New York.
63. At trial, Defendant Strauss testified that he was parked near the intersection, somewhere again by the BP gas station, facing north and witnessed when Plaintiff *'ran the light three(3) seconds after it turned red....and indeed pulled him over about four blocks away...after passing about three cars behind him...'*
64. Unfortunately, counsel Schotter did not capitalize on these statements to prove that Defendant Strauss was indeed untruthful.
65. Like the first ticket, if he was telling the truth, Defendant Strauss would have been able to pull Plaintiff over **immediately after** Plaintiff ran the light instead of allowing him to drive more than four blocks away.
66. More importantly, if Plaintiff had indeed run the light, it would have meant that the three cars behind him also ran the light; which is **impossible**.
67. Due to a preponderance of evidence supporting ineffective assistance of counsel, Mr. Schotter failed to present a meaningful case to convince the Court that Plaintiff did not run the red light as charged. The Judge prevented counsel from further questioning Defendant Strauss as he (Mr. Schotter) was wasting time flipping through his newly-created notes.
68. Plaintiff was unable to secure a witness for a trial and counsel did not ask for an adjournment. As a result, the Court found Plaintiff guilty of the violation,

imposed a fine of **$463.00, and removed another 3 points** from Plaintiff's driver's license. As mentioned earlier, Plaintiff never had such penalty. Additionally, was required to **pay $300.00** as "DRIVER RESPONSIBILITY ASSESTMENT".

69. Mr. Schotter's subpar representation was responsible for the conviction.
70. Plaintiff filed an appeal but was denied by the Appeal Board on November 30, 2015. Plaintiff intends to file an Article 78 petition pending the outcome of this complaint.
71. For his safety from further harassment and retaliation, Plaintiff installed surveillance and dash-board cameras in his car to record any evidence of such abuse of power by Defendant Strauss.
72. On the day before the statute of limitation expires on the Notice of Claim against the City of New York, Plaintiff received a call from counsel asking if Plaintiff would agree to settle, and Plaintiff agreed.
73. Later on that day, January 20, 2016, Plaintiff received a call again from counsel alleging that the Comptroller's office would agree to settle for $1,500.00; which is an amount that would barely cover the expenses incurred as a result of fines for both tickets, thus excluding lost wages, punitive damages for mental anguish, severe distress, impending and constant fear of being stopped by Officer Strauss for any traffic violation without solid material evidence, and reinstating the 6 points removed from Plaintiff's driver's license.
74. Counsel did not consult with an ADR specialist, and as time did not permit to further settlement negotiations, Plaintiff had no choice but to refuse the offer.
75. On January 21, 2016, Mr. Schotter agreed to fulfill his agreement by filing a last-minute civil rights suit, but with a Stipulation for Withdrawal citing '*conflict of interest*' on settling.
76. Mr. Schotter told Plaintiff that since there has been '*no arrest, no jail time, no imprisonment, no physical abuse or injuries, or police brutality*', it will be counter-productive to spend the time litigating this case to the fullest extent on a contingency basis; in violation in his Retainer Agreement.
77. Accounting for one of the many reasons to file this amended complaint, Mr. Schotter intentionally failed to mention his weak performance during the trial of the second ticket.

## CAUSES OF STATE ACTION

78. Defendant Strauss's misconduct amounts to **intentional infliction of mental anguish and emotional distress.**

8

79. Officer Strauss undertook said conduct for no purpose other than to unlawfully **intimidate and harass** Plaintiff because Plaintiff dared to exercise his vested right to file a complaint to expose prior misconduct. He is a typical example of a 'bad cop'.
80. To the extent that Defendant Strauss walked away without any sympathy for his reckless action, he not only violated his Courtesy, Professionalism, and Respect code of conduct), he showed a total **disregard for Plaintiff being a foreigner, colored, and a Muslim.**
81. Plaintiff believes that if he was a person looking like Defendant Bratton, being white and American born, Officer Strauss would have respectfully complied with the requests to provide his name and badge number. Accordingly, such disrespect amounts to a **classic act of discrimination**.
82. Officer Strauss also undertook a conduct and **retaliated** against Plaintiff for Plaintiff's warning and right to file a complaint.
83. Upon information believed the abuse to which Plaintiff was subjected was consistent with an institutionalized practice of the NYPD, which was known to and ratified by Defendants City of New York and William J. Bratton, which at no time took any effective action to prevent police personnel from continuing to engage in such misconduct.
84. Upon information and belief, Defendants City of New York and William J. Bratton had prior notice of the vicious propensities of Defendant Strauss, but took no steps to train him, correct his abuse of authority, or to discourage his unlawful use of authority. The failure to properly train Defendant Strauss included failure to instruct him in applicable provisions of the New York Penal Law and Vehicle and Traffic Law.
85. Upon information and belief, Defendants City of New York and William J. Bratton authorized, tolerated as institutionalized practices, and ratified the misconduct hereinbefore detailed by:
    (a) Failing to properly discipline, restrict and control employees, including Defendant Strauss, known to be irresponsible in their dealings with citizens of the community, and
    (b) Failing to take adequate cautions in hiring, promotions, and retention of police personnel, including specifically Defendant Strauss and
    (c) This conduct also constitutes negligence or gross negligence under state law.
86. As a consequence of the abuse of authority detail above, Plaintiff sustained the damages hereinbefore alleged.

## CAUSES OF FEDERAL ACTION

87. To the extent that Plaintiff is foreign-born, colored, and a Muslim, Defendant Strauss acted **discriminatorily**, discourteously, disrespectfully, and unprofessionally when he blatantly walked away from Plaintiff and ignored a request to provide his name and badge number.

88. To the extent that Defendant Strauss unlawfully issued traffic summons as a consequence of Plaintiff warning to file a complaint against Defendant Strauss for his reckless driving, such adverse reaction characterizes and demonstrates a **retaliatory** conduct.

89. The herein above described actions and omissions, engage in under color of state authority by these Defendants, including defendant City of New York, sued as a person, responsible because of its authorization, condonations, and ratifications thereof for the acts of its agents, **deprived the Plaintiff of rights** secured to him by the Constitution of the United States, including, but not limited to, (a) his Sixth Amendment rights to a fair trial and impartial judge, (b) his Fifth and Fourteenth Amendment rights to due process of law, (c) his Fourteenth Amendment rights to equal protection of the law, and (d) his Eighth Amendment rights to be free from unusual penalties.

## PENDENT AND SUPPLEMENTAL STATE CAUSES OF ACTION

Plaintiff incorporates by reference the allegations set forth in all proceeding paragraphs as if fully set forth herein.

90. The acts and conduct hereinbefore alleged constitute a violation of Article 1, Sections 3, 11, and 12 of the Constitution of the State of New York, Sections 8 and 11 of the New York State Civil Rights law, malicious prosecution, abuse of process, prima facie tort, negligence, and gross negligence under the common law of the State of New York. This Court has pendant of supplemental jurisdiction to hear and adjudicate these claims.

## PRAYER FOR RELIEF

91. Wherefore Plaintiff requests the following relief:

(a)   Compensatory damages against each defendant, jointly and severally, in the amount of $2,000.00;

(b)   Punitive and exemplary damages in the amount of $75,000.00, or as the Court deem just and equitable;

(c) Deter and prevent Defendant Strauss from engaging in similar retaliatory and discriminatory misconduct.

(d) Costs of suit; attorney fees.

(e) Pre-and post-judgment interest as permitted by law;

(f) Reverse the 6 points removed from Plaintiff's driver's license, and order expungement of all records accumulated by the DMV and public; and

(g) Such other relief, including injunctive and/or declaratory relief, as the Court may deem proper.

Respectfully submitted,

### DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the Plaintiff in the above action, that he has authored this amended complaint, and that the non-legal information contained herein is true and correct to the best of his knowledge and recollection pursuant to 28 U.S.C. §1746; 18 U.S.C. §1621.

Respectfully submitted,

**This Amended Complaint is filed *pro se*, subject to future amendments when and if assignment of counsel is deemed necessary, and in the absence of any need for security, sanctions, or deposit.**

**This Amended Complaint, being filed <u>after</u> the Motion for Default against defendant Strauss, safeguards Plaintiff's right to pursue any such procedural default attributable to defendant Strauss in the original complaint.**

11