UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

JAMAL ADEEN AZEEZ,

                    Plaintiff,

      -against-

CITY OF NEW YORK, WILLIAM J. BRATTON,
and BRETT STRAUSS,

                  Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**16-CV-342 (NGG) (SJB)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Jamal A. Azeez, proceeding pro se, brings this action pursuant to 42 U.S.C.

§ 1983 alleging civil rights violations by Defendants the City of New York; then-Commissioner

of the New York City Police Department ("NYPD") William J. Bratton; and NYPD Officer Brett

Strauss. (Compl. (Dkt. 1); Am. Compl. (Dkt. 14).) Pending before the court are the parties'

cross-motions for summary judgment. (Pl. Mot. for Summ. J. ("Pl. Mot.") (Dkt. 58); Defs. Mot.

for Summ. J. ("Defs. Mot.") (Dkt. 80).) For the following reasons, the court DENIES Plaintiff's

motion and GRANTS Defendants' motion.

I.      **BACKGROUND**

    A.    **Facts**

The following statement of facts is largely taken from the parties' Local Rule 56.1

statements and deposition testimony, with the evidence "constru[ed] . . . in the light most

favorable to the non-moving party." Wandering Dago, Inc. v. Destito, 879 F.3d 20, 30 (2d Cir.

2018) (internal quotation marks and citation omitted). (See Defs. Statement of Material Facts

("Defs. 56.1") (Dkt. 82); Pl. Resp. to Defs. 56.1 ("Pl. 56.1 Resp.") (Dkt. 86 at ECF p.1).) The parties agree on the following facts, except where otherwise noted.[1]

### 1. The First Encounter

On an unspecified date in September 2013, Plaintiff, with his wife as a passenger, was driving east along Atlantic Avenue when he decided to make a right-hand turn onto the southbound Van Wyck Expressway service road (the "Service Road"). (Defs. 56.1 ¶¶ 14, 16; see id. ¶¶ 44-45.) The Service Road is a one-way, three-lane road. (Id. ¶¶ 20-21.) At that same time, Officer Strauss was driving his police car northbound—against traffic—on the Service Road. (Id. ¶ 17.) Strauss, who was pursuing another motorist, used flashing lights, but no siren, to alert other motorists to his presence. (Id. ¶¶ 18-19; see Pl. 56.1 Resp. ¶ 18.) As Plaintiff turned onto the Service Road, he was driving at about five miles per hour. (Defs. 56.1 ¶ 24.) About five to ten feet from the corner where Plaintiff had turned, Plaintiff's car and Strauss's car almost collided, but Plaintiff came to a slow stop to allow Strauss's car to pass. (Defs. 56.1 ¶¶ 23, 25; see id. ¶ 13.) Plaintiff did not see the police car when he was driving along Atlantic

---

[1] According to Local Civil Rule 56.1(d), both statements and counterstatements of material fact "must be followed by citation to evidence which would be admissible." If a party's response to a statement of material fact does not cite relevant evidence, the statement of material fact is deemed admitted. Local Civ. R. 56.1(c), (d); see, e.g., Green v. Rochdale Vill. Soc. Servs:, Inc., No. 15-CV-5824 (BMC), 2016 WL 4148322, at *1 n.1 (E.D.N.Y. Aug. 4, 2016). Pro se parties are not excused from the requirements of Rule 56.1. See Wali v. One Source Co., 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009). Nevertheless, the court is under an obligation to "liberally construe" pro se Plaintiff's briefing, see McLeod v. Jewish Guild for the Blind, 864 F.3d 154, 156 (2d Cir. 2017), and view the facts of the case "in the light most favorable" to him, as the non-moving party, see Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (per curiam). So while the court will deem admitted any statement by Defendants to which Plaintiff has no response supported by record evidence, the court will, at the same time, exercise its "discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." See Wali, 679 F. Supp. 2d at 178.

Local Rule 56.1 also requires that an opposing party's counterstatement of material facts be "correspondingly numbered" to the moving party's statement of material facts, or else the moving party's statement of facts will be deemed admitted. Local Civ. R. 56.1(b), (c). In this case, while Plaintiff has mostly adhered to that rule, some of his counterstatements are slightly misnumbered. (See, e.g., Pl. 56.1 Resp. ¶ 19 (responding to Defs. 56.1 ¶ 20).) Because the court is able to discern the paragraphs from Defendants' Rule 56.1 Statement to which each of Plaintiff's counterstatements is intended to respond, the court will not hold these discrepancies against Plaintiff. Cf., e.g., Urena v. Wolfson, No. 09-CV-1107 (KAM), 2012 WL 958529, at *2 n.4 (E.D.N.Y. Mar. 20, 2012).

Avenue, and only saw it when he turned onto the Service Road. (Id. ¶ 26.) This near-collision, and the conversation that followed, is referred to as the "First Encounter." (See id. ¶ 13.)

Plaintiff, considering Strauss's driving to have been reckless because Strauss was driving against traffic at approximately 40 miles per hour, decided to follow Strauss to get his name and badge number so that Plaintiff could file a complaint. (Id. ¶¶ 27-28.) After driving for five or ten minutes, Plaintiff found Strauss. (Id. ¶ 29.) Plaintiff asked Strauss for his name and badge number. (Id. ¶ 30.) He also told Strauss that he wanted to file a complaint for reckless driving and said, "You nearly killed me and my wife." (Id. ¶ 31.) Strauss responded that any complaint against him would not be the first or the last. (Id. ¶ 32.) Plaintiff's wife says that Strauss then gave Plaintiff his name and badge number (id. ¶¶ 35-37), while Plaintiff says that Strauss only gave his badge number (Pl. 56.1 Resp. ¶ 36).[2] Plaintiff did not write down Strauss's license plate number. (Defs. 56.1 ¶ 39.) Plaintiff did not report his alleged near-collision with Strauss to the police or other municipal authorities.[3] (See id. ¶¶ 40-43.) Plaintiff did, however, briefly attempt to find a lawyer to represent him in a complaint against Strauss. (Id. ¶ 46.)

### 2. The First Summons (October 12, 2013)

On October 12, 2013, Plaintiff was again driving east on Atlantic Avenue. (Id. ¶ 53.) Plaintiff was driving in the right-hand lane as he approached the intersection of Atlantic Avenue and the Service Road. (Id. ¶ 54.) There was, however, a car stopped in the right-hand lane in front of Plaintiff, so Plaintiff swerved into the middle lane. (Id. ¶¶ 55, 57.) Plaintiff then made a

---

[2] Regardless, Plaintiff has claimed that he did not report the alleged near-collision because Strauss refused to give Plaintiff his name or badge number on the day of the First Encounter. (Defs. 56.1 ¶ 33.)

[3] Defendants add that Plaintiff filed a previous complaint against a driver who struck Plaintiff with his car while Plaintiff was riding his bicycle. (Defs. 56.1 ¶ 48.) In conjunction with that incident, Plaintiff took a photograph of the driver and the car's license plate, and a video of the driver driving away from the scene of the accident. (Id. ¶ 49.) Plaintiff then called the police to report the incident and subsequently filed a complaint against the driver, whose identity he traced from the photograph of the license plate. (Id. ¶¶ 50-52.)

right-hand turn from the middle lane of Atlantic Avenue onto the Service Road, an illegal maneuver. (Id. ¶¶ 58-60.) Plaintiff testifies that the traffic light at the intersection had turned to amber, but not red, before he crossed the white lines to enter the intersection. (Id. ¶ 61.) This intersection is "regarded as an Accident-Prone Location" within the 102nd NYPD Precinct. (Decl. of Brett Strauss (Dkt. 85) ¶ 13; see Defs. 56.1 ¶ 65.)

Unbeknownst to Plaintiff, at the same time that he was executing this turn, Strauss was sitting in his police car, parked on the sidewalk of Atlantic Avenue at the southwest corner of the intersection, watching for traffic infractions. (Defs. 56.1 ¶¶ 62-63.) Strauss claims that he saw a car—now known to be driven by Plaintiff—run the red light at the intersection. (Id. ¶ 66.) At the time that he saw the car go through the intersection, Strauss did not see that Plaintiff was driving the car. (Id. ¶ 67.) For that matter, Strauss did not see "any physical characteristics of the driver," including age, gender, or race, or "whether the driver was wearing any religious clothing." (Id. ¶¶ 68-69.) Strauss states that he did not recognize Plaintiff's car prior to issuing Plaintiff a summons. (Id. ¶ 70.) Strauss followed Plaintiff along the Service Road and pulled him over on or near the ramp to the Van Wyck Expressway, about 60 to 100 feet away from the intersection. (Id. ¶¶ 71-72; see Pl. 56.1 Resp. ¶ 71.) Strauss exited his car and approached the driver's side window of Plaintiff's car. (Defs. 56.1 ¶ 73.) Strauss told Plaintiff that Plaintiff had run a red light. (Id. ¶ 74.) Strauss then issued Plaintiff a traffic summons for violation of section 1111(d)(1) of the New York Vehicle & Traffic Law (the "First Summons"). (Defs. 56.1 ¶ 75.)

Plaintiff recognized Strauss as the officer from the First Encounter. (Id. ¶ 76.) Plaintiff then told Strauss that he wanted to file a complaint against him, and Strauss again responded to the effect that any complaint would not be the first or last against him. (Id. ¶¶ 77-78.) Plaintiff could see Strauss's shirt but he did not look for Strauss's badge, ask him for his name, or take a

4

photograph of his license plate at any time during the issuance of the First Summons. (Id. ¶¶ 80-84.) Strauss's tax identification number was written on the summons, which Defendants state could be used to obtain Strauss's identity. (Id. ¶¶ 85-86.)

Plaintiff contested the First Summons at a hearing held before the Department of Motor Vehicles (the "DMV") on October 14, 2014 (the "First Hearing"). (Id. ¶ 87.) Both Plaintiff and Strauss testified at the hearing, and Plaintiff cross-examined Strauss. (Id. ¶¶ 88-89.) Plaintiff presented his theory that Strauss issued the First Summons in retaliation for Plaintiff's criticism of Strauss and his asking for Strauss's name and badge number during the First Encounter. (Id. ¶ 90.) At the time of the First Hearing, Strauss could not recall ever having encountered Plaintiff prior to issuing the First Summons. (Id. ¶ 93.) Strauss did remember the First Encounter but did not know that Plaintiff was the person involved in that incident. (Id. ¶ 91.) Strauss is now aware that Plaintiff was the person who approached him in the First Encounter. (Id. ¶ 92.) Regardless, the DMV administrative law judge found Plaintiff guilty of running the red light (id. ¶ 94) and fined him $150 plus an $88 administrative surcharge (Tr. of Oct. 14, 2014, DMV Hrg. ("1st Hrg. Tr.") (Dkt. 84-8) 11:24-12:1). Plaintiff appealed the verdict to the DMV Appeals Board, which affirmed the decision. (Id. ¶¶ 95-96.) Plaintiff again appealed the guilty verdict, which was affirmed once more. (Id. ¶¶ 97-98.)

### 3. The Second Summons (October 24, 2014)

On October 24, 2014, Strauss was sitting in his police car in the parking lot of a gas station at the southwest corner of Atlantic Avenue and 111th Street, facing north. (Id. ¶ 99.) This intersection is also "regarded as an Accident-Prone Location" within the 102nd NYPD Precinct. (Id. ¶ 101.) From his police car, Strauss observed a car—now known to be driven by Plaintiff—run a red light. (Id. ¶ 103.) Strauss did not recognize Plaintiff's car or see that Plaintiff was driving the car. (Id. ¶ 104-05.) As with the First Summons, Strauss did not see

5

"any physical characteristics of the driver," including age, gender, or race, or "whether the driver was wearing any religious clothing." (Id. ¶¶ 106-07.)

Strauss drove after Plaintiff's car and pulled it over a minute or two later, on Atlantic Avenue between 115th and 116th Streets. (Id. ¶¶ 108-09.) Strauss told Plaintiff that he had run a red light and issued a summons (the "Second Summons"). (Id. ¶¶ 110-11.) Plaintiff knew at that time that Strauss was accusing him of running the traffic light at Atlantic Avenue and 111th Street. (Id. ¶ 112.) Plaintiff's wife and imam were in the car with him. (Id. ¶¶ 114.) Plaintiff later represented to the DMV, "I have a witness, another [M]uslim, who was behind me after leaving the mosque, [who] will testify that I did not run any red light; neither did he." (Id. ¶ 113.) Plaintiff has admitted that he knows of no witness to the Second Summons who was driving behind him. (Id. ¶ 115.)

Plaintiff, now represented by attorney Geoffrey Schotter, contested the Second Summons at a hearing held before the DMV on July 21, 2015 (the "Second Hearing"). (Id. ¶ 116-17.) Plaintiff states in the amended complaint that he met Schotter for the first time on the date of the Second Hearing, but Schotter had previously represented Plaintiff in his hearing pursuant to General Municipal Law, Section 50-h, held on May 6, 2015, pertaining to these summonses. (Id. ¶¶ 118-191 see Am. Compl. ¶ 62.) Plaintiff and Schotter also met several times to prepare for the Second Hearing. (Id. ¶ 120.) Both Plaintiff and his wife testified on Plaintiff's behalf at the Second Hearing. (Id. ¶ 121.) The Second Hearing was presided over by a different judge than the judge who presided over the First Hearing. (Id. ¶ 122.) At the hearing, Strauss testified that he had been parked, facing north (i.e., facing Atlantic Avenue), in a parking lot at the southwest corner of Atlantic Avenue and 111th Street, and that he drove from there to where he pulled Plaintiff over. (Id. ¶ 123-24.) Strauss was asked where he pulled Plaintiff over, to which

he responded, "East Atlantic Avenue on 111th Street." (Id. ¶ 125.) Neither Plaintiff nor his attorney pointed out that Strauss actually pulled Plaintiff over at 115th Street. (Id. ¶ 126.) The administrative law judge found Plaintiff guilty of running the red light. (Id. ¶ 127.) Because of his prior violation, Plaintiff was fined $375 plus an $88 administrative surcharge. (Tr. of July 21, 2015, DMV Hrg. ("2d Hrg. Tr.") (Dkt. 84-11) 14:4-5.) Plaintiff again appealed the guilty verdict to the DMV Appeals Board, which affirmed the administrative law judge's decision. (Defs. 56.1 ¶¶ 128-29.)

Since receiving the red light summonses from Strauss, Plaintiff has paid more attention at traffic lights. (Id. ¶ 142.)

### 4. Plaintiff's Discrimination Complaints

After receiving the Second Summons, Plaintiff filed a complaint against Strauss, alleging "Police Retaliation, False Charges, Racial Profiling, and Discrimination." (Id. ¶ 130.) Defendants state that "Plaintiff ha[d] no evidence to support a belief that [Strauss] was biased against him on the grounds of his race or religion," though Plaintiff contends that Defendants refused discovery requests that "would have aided Plaintiff to better respond to this statement." (Id. ¶ 131; Pl. 56.1 Resp. ¶ 131.) Defendants add that "[t]he parts of Atlantic Avenue on which Plaintiff was stopped are in an ethnically diverse neighborhood." (Defs. 56.1 ¶ 132.)

Defendants also note that Plaintiff had previously been fired from his job at Rye Brook Labs "because he complained about the laboratory manager's work habits, and was unable to get along with her, and for no other reason." (Id. ¶ 133.) In 2013, following his termination, Plaintiff sued Rye Brook Labs, alleging that he was terminated as a result of racial and religious discrimination. (Id. ¶ 135.) Plaintiff filed a complaint with the New York State Division of Human Rights, which found Plaintiff's complaint to be "meritless" (id. ¶ 137), though Plaintiff notes that his complaint was dismissed for failure to exhaust administrative remedies (Pl. 56.1

7

Resp. ¶ 137). Plaintiff has also brought two other lawsuits alleging racial and religious discrimination: one in 2014, against the company Medytox; and one in 2009, against Enzo Labs, following his termination from that place of employment. (Defs. 56.1 ¶¶ 140-41.)

B.    **Procedural History**

Plaintiff filed his complaint on January 21, 2016 (Compl.), and filed an amended complaint on May 17, 2016 (Am. Compl.). Discovery was originally scheduled to be completed by no later than August 31, 2016. (May 17, 2016, Min. Entry.) Following a number of extensions of time, discovery was eventually closed on March 18, 2017. (See Mar. 17, 2017, Order.) On April 3, 2017, without having sought a pre-motion conference, Plaintiff moved for summary judgment. (See Pl. Mot.) Magistrate Judge Steven L. Tiscione set a briefing schedule for both Plaintiff's motion and an anticipated motion for summary judgment by Defendants. (See Apr. 11, 2017, Min. Entry (Dkt. 60).) The cross-motions for summary judgment were fully briefed on September 26, 2017.

During the course of litigation, the various magistrate judges assigned to this action have denied a number of motions made by Plaintiff: (1) a request for a certificate of default based on the incorrect assertion that Defendants had not answered or otherwise timely responded to the complaint or amended complaint (see June 2, 2016, Order); (2) a motion to compel DMV hearing records, which Magistrate Judge Marilyn D. Go had instructed Defendants to turn over to Plaintiff (see June 9, 2016, Order); (3) a motion for appointment of counsel (see Sept. 15, 2016, Order (Dkt. 33)); (4) a motion to compel responses to Plaintiff's third set of interrogatories (though Magistrate Judge Steven L. Tiscione did direct Defendants to respond to Plaintiff's first set of requests for admissions) (see Dec. 15, 2016, Min. Entry (Dkt. 40)); (5) a motion to compel further responses to Plaintiff's requests for admissions (see Jan. 26, 2017, Min. Entry (Dkt. 45));

(6) a motion for sanctions (see Apr. 11, 2017, Min. Entry (Dkt. 60)); (7) a motion to compel courthouse security video footage (see June 1, 2017, Order); and (8) another request for a certificate of default (see Aug. 21, 2017, Order). This court has upheld a number of these decisions on appeal by Plaintiff.[4] (See June 13, 2016, Order (Dkt. 24); Mar. 31, 2017, Order (Dkt. 57); Jan. 19, 2018, Order (Dkt. 89).)

## II.    LEGAL STANDARD

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." Figueroa v. Mazza, 825 F.3d 89, 98 (2d Cir. 2016) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The movant may discharge this burden by showing that the non-moving party has 'fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co., 255 F. Supp. 3d 443, 451 (S.D.N.Y. Apr. 28, 2015) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "'The mere existence of a scintilla of evidence' in support of the non-movant will be insufficient to defeat a summary judgment motion." Transflo Terminal Servs., Inc. v. Brooklyn Res. Recovery, Inc., 248 F. Supp. 3d 397, 399 (E.D.N.Y. 2017) (quoting Liberty Lobby, 477 U.S. at 252).

---

[4] The appeal of Judge Tiscione's denial of Plaintiff's request for a certificate of default is pending before this court. (See Aug. 21, 2017, Order; Pl. Aug. 24, 2017, Appeal (Dkt. 76).) The court DENIES Plaintiff's appeal. It is clear that Defendants followed the court's rules by serving their motion papers on Plaintiff on July 20, 2017, but waiting to file the papers with the court, as the motion was not yet fully briefed. (See Defs. Aug. 17, 2017, Letter (Dkt. 74).)

"In determining whether an issue is genuine, '[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion.'" SCW West LLC v. Westport Ins. Corp., 856 F. Supp. 2d 514, 521 (S.D.N.Y. 2012) (quoting Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995)). "[T]he judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Redd v. N.Y. Div. of Parole, 678 F.3d 166, 173-74 (2d Cir. 2012) (quoting Liberty Lobby, 477 U.S. at 249). However, "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," and "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).

The court must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." McLeod v. Jewish Guild for the Blind, 864 F.3d 154, 156 (2d Cir. 2017) (citation and quotation marks omitted). Nevertheless, proceeding pro se does not relieve a litigant from the usual requirements of summary judgment. See, e.g., Marks v. Scalabrini, 204 F. Supp. 3d 514, 521 (S.D.N.Y. 2016). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991)); see Christian v. Powell, No. 16-CV-673 (KBF), 2017 WL 398406, at *2 (S.D.N.Y. Jan. 30, 2017) ("[A] pro se movant for summary judgment must still provide 'a short and plain statement of the claim showing that the pleader is entitled to relief' and show that 'there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law.'" (first quoting Fed. R. Civ. P. 8(a)(2), and then quoting Fed. R. Civ. P. 56(a))).

## III.  DISCUSSION

Liberally construing Plaintiff's amended complaint, he asserts the following claims under 42 U.S.C. § 1983: deprivation of his Sixth Amendment right to a fair trial; deprivation of his Fifth and Fourteenth Amendment rights to due process; deprivation of his Fourteenth Amendment right to equal protection; deprivation of his Eighth Amendment right to be free from "unusual penalties"; retaliation in violation of his rights under the First Amendment; malicious abuse of process; and malicious prosecution. (Am. Compl. ¶ 89; see id. ¶ 90.) He also asserts a number of common-law, constitutional, and statutory claims under state law. (See id. ¶¶ 78-86, 90.)

Both sides have moved for summary judgment on all claims. (See Pl. Mot; Defs. Mot.) After addressing the merits of both motions as they apply to each of Plaintiff's federal claims, the court DENIES Plaintiff's motion and GRANTS Defendants' motion.

### A.  Rule 56.1 Statement

Defendants first argue that Plaintiff's motion for summary judgment should be denied in its entirety due to Plaintiff's failure to file an accompanying Rule 56.1 statement. (Defs. Mem. in Opp'n to Pl. Mot. and in Supp. of Defs. Mot. ("Defs. Mem.") (Dkt. 83) at 8-9.) Defendants are correct that, ordinarily, failure to comply with Local Rule 56.1 "may constitute grounds for denial of the motion." Local Civ. R. 56.1(a); see MSF Hldg. Ltd. v. Fiduciary Tr. Co., 435 F. Supp. 2d 285, 304 (S.D.N.Y. 2006) (denying a cross-motion for summary judgment "on the ground that it has not complied with the requirements of Local Rule 56.1"). The court has

"broad discretion," however, "to overlook a party's failure to comply with local court rules." Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001).

As a general matter, Rule 56.1(a) is not "an appropriate basis to deny relief to a pro se party." Goldstein v. Solucorp Indus., Ltd., No. 11-CV-6227 (VB), 2015 WL 6143813, at *4 (S.D.N.Y. Oct. 16, 2015). That is true even where, as here, Plaintiff has not claimed that he was unaware of the Rule 56.1 requirements. (Cf. Pl. Mot. to Reject Defs. 56.1 (Dkt. 86 at ECF p.21) at 2 ("Defendants provided Plaintiff with a copy of [Rule 56.1].").) While Defendants may well be correct that Plaintiff has not "unearth[ed] admissible evidence entitling [him] to summary judgment" (Defs. Mem. at 9), the court will not relinquish its duty to scrutinize the substance of a pro se party's briefs simply because that party failed to comply with a technical requirement which the court has discretion to overlook.

**B.    Abandonment**

Ordinarily, any issues not addressed in an opposition brief are deemed abandoned by the party opposing the motion. Jackson v. Fed. Express, 766 F.3d 189, 195 (2d Cir. 2014) ("[A] partial response arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims."). The Second Circuit has, however, urged courts to distinguish between pro se and counseled parties in this regard:

> In the case of a pro se, the district court should examine every claim or defense with a view to determining whether summary judgment is legally and factually appropriate. In contrast, in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.

Id. at 197. Nevertheless, courts sometimes apply the abandonment rule to pro se litigants, see McAllister v. Quik Park, 661 F. App'x 61, 63 (2d Cir. 2016) (summary order), especially those

who, like Plaintiff, are "capable of opposing motions, submitting evidence, and communicating issues with the [c]ourt." Turner v. Sidowicz, No. 12-CV-7048 (NSR), 2016 WL 3938344, at *3 (S.D.N.Y. July 18, 2016).

As Defendants point out, Plaintiff's brief in opposition to Defendants' motion for summary judgment fails to respond to Defendants' arguments on the following claims: "against former Police Commissioner Bratton, of municipal liability, supervisory liability, violations of equal protection, retaliation, malicious abuse or process, and each and all of his purported state law claims." (Defs. Reply at 4.) Instead, Plaintiff's brief in opposition to Defendants' motion for summary judgment focuses almost entirely on the question of whether Strauss lied during his testimony before the DMV. (See Pl. Opp'n at 6-11.) Plaintiff also complains about the discovery process (see id. at 11) and misconstrues the evidentiary support for Defendants' motion (see id. at 4-5, 11-12). Even under the most liberal construction of this brief, the court would be forced to conclude that Plaintiff has abandoned the vast majority of his claims.

Nevertheless, the court will not simply grant Defendants' motion for summary judgment as to the claims that Plaintiff failed to address in his opposition briefing. For one, Plaintiff did address most of his claims in his motion for summary judgment. (See Pl. Mot.) While this brief obviously did not respond to the grounds for summary judgment put forth by Defendants in their subsequent motion, the court takes this brief as a good indication that Plaintiff did not intend to abandon his claims on motion for summary judgment. Second, the court does not believe that application of the abandonment doctrine would be appropriate in this context. The court takes seriously its obligation to "examine every claim or defense" put forth by a pro se party "with a view to determining whether summary judgment is legally and factually appropriate." See Jackson, 766 F.3d at 197. While the court would hold a pro se attorney, or even a non-attorney

pro se party with generally competent and thorough briefing, to a higher standard, cf. Sullivan v. City of New York, 14-CV-1334 (JMF), 2015 WL 5025296, at *5 (S.D.N.Y. Aug. 25, 2015), the court chooses to exercise its discretion and not apply this rule to dismiss the vast majority of Plaintiff's claims without further discussion. Cf., e.g., James v. Gage, No. 15-CV-106 (KMK), 2018 WL 2694436, at *14 n.15 (S.D.N.Y. June 5, 2018).

### C. Individual Liability Against Bratton

Defendants urge the court to dismiss all of Plaintiff's claims against Bratton, the former commissioner of the NYPD, "as duplicative of [Plaintiff's] claims against the City." (Defs. Mem. at 17.) The court agrees. Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)). "[C]ourts routinely dismiss official-capacity claims where the plaintiff also sues the municipality." Thomas v. Venditto, 925 F. Supp. 2d 352, 364 (E.D.N.Y. 2013); see also Nogue v. City of New York, No. 98-CV-3058 (JG), 1999 WL 669231, at *7 n.13 (E.D.N.Y. Aug. 27, 1999) ("To the extent the Police Commissioner is being sued in his official capacity, any claim against him is merely duplicative of the action against the City."). Because Plaintiff has named the City as a defendant in this action, his claims against Bratton are dismissed as duplicative.

### D. § 1983 Claims – Individual Liability

Liberally construing all of Plaintiff's allegations and defenses, the court grants summary judgment for Defendants on all of Plaintiff's claims of individual liability.

1. Malicious Prosecution

*a.* *Plaintiff's § 1983 Claim of Malicious Prosecution*

"To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the

14

proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotation marks omitted). A claim for malicious prosecution under § 1983 additionally requires the plaintiff to "show a 'seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment.'" Mitchell v. City of New York, 841 F.3d 72, 79 (2d Cir. 2016) (quoting Washington v. County of Rockland, 373 F.3d 310, 316 (2d Cir. 2004)).

Plaintiff argues that Strauss violated his Fourth Amendment right to be free from malicious prosecution by bringing the First and Second Summonses "with malice towards Plaintiff." (Pl. Mot. at 13.) Because Plaintiff has failed to establish at least three of the required elements for a claim of malicious prosecution, the absence of any one of which would be fatal to his cause of action, summary judgment must be awarded to Defendants.

As Defendants point out, a plaintiff making a claim of malicious prosecution must allege that the defendants initiated criminal—not civil—proceedings against him. See Laham v. Safir, No. 98-CV-3115 (RCC), 2001 WL 1448441, at *3 (S.D.N.Y. Nov. 15, 2001); Lacara v. Town of Islip, 791 F. Supp. 69, 70 (E.D.N.Y. 1992). Plaintiff was charged with two violations of the Vehicle & Traffic Law, which New York law defines as "not a crime." N.Y. Veh. & Traf. Law § 155; see Glasgow v. Beary, 2 F. Supp. 3d 419, 426 (E.D.N.Y. 2014). Plaintiff cannot meet the first element of his malicious prosecution claim.

Plaintiff's malicious prosecution claim also fails at the second element. Plaintiff was convicted of an offense and a guilty verdict against him was upheld on appeal—twice. He cannot argue that the proceedings terminated in his favor, a requirement of any claim of

malicious prosecution. See Rudaj v. Treanor, No. 11-CV-7098 (LAP), 2011 WL 13128215, at *3 (S.D.N.Y. Dec. 7, 2011) (citing, inter alia, Heck v. Humphrey, 512 U.S. 477, 489-90 (1994)).

Finally, Plaintiff has failed to establish that Strauss lacked probable cause for commencing proceedings against him. On this point, Defendants state that "[a]n adjudication of guilt or liability by an administrative law judge establishes the existence of probable cause for the charges, precluding a malicious prosecution claim." (Defs. Mem. at 21.) This is true, and precludes Plaintiff's claim. See Nasca v. County of Suffolk, No. 05-CV-1717 (JFB), 2008 WL 53247, at *4 n.4 (E.D.N.Y. Jan. 2, 2008). But while this fact would be enough to find for Defendants on this point, the court will also here address Defendants' extensive briefing on whether Plaintiff is collaterally estopped from relitigating the issue of probable cause. (See Defs. Mem. at 9-10.)

### b.    The Collateral-Estoppel Effect of the DMV Hearings

Defendants state that the DMV's finding that Plaintiff ran the red lights, upheld on appeal, "is identical to the probable cause question . . . in the present case, requiring that Plaintiff be estopped from relitigating it." (Id. at 10.) Plaintiff, meanwhile, seems to argue that the prior determinations of guilt in the DMV proceedings should be ignored because of the "perjury" committed by Strauss when he stated during the Second Hearing that he pulled Plaintiff's car over at 111th Street, when this interaction actually occurred at 115th Street, as well as other allegedly inconsistent statements made by Strauss. (See Pl. Mot. at 9-11; Pl. Opp'n at 10.)

"Under the doctrine of collateral estoppel, 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" United States v. U.S. Currency in Amount of $119,984.00, 304 F.3d 165, 172 (2d Cir. 2002) (quoting Schiro v. Farley, 510 U.S. 222, 232 (1994)). The party

16

seeking to preclude relitigation of an issue must show that the following prerequisites are satisfied:

> (1) the issues in both proceedings must be identical; (2) the issue must have been actually litigated and actually decided in the prior proceeding; (3) there must have been a full and fair opportunity to litigate the issue in the prior proceeding; and (4) the resolution of the issue must have been necessary to support a valid and final judgment on the merits.

Id. The principles of collateral estoppel apply "[w]hether the prior adjudication occurred in the context of an administrative determination . . . or a full-fledged judicial proceeding." United States v. E. River Hous. Corp., 90 F. Supp. 3d 118, 140 (S.D.N.Y. 2015) (second alteration in original) (quoting Staatsburg Water Co. v. Staatsburg Fire Dist., 527 N.E.2d 754, 756 (N.Y. 1988)). "The burden of showing that the issues are identical and were necessarily decided in the prior action rests with the party seeking to apply issue preclusion, . . . [while] the burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues rests with . . . the party opposing the application of issue preclusion." Kulak v. City of New York, 88 F.3d 63, 72 (2d Cir. 1996).

The court agrees that Plaintiff is precluded from relitigating whether he ran either of the red lights in question. First, that issue—insofar as it is relevant to the instant case—is the same here as it was in the administrative proceedings before the DMV. Second, this issue was litigated before the DMV and actually decided, with two verdicts of guilty that were upheld on appeal. Finally—jumping ahead to the fourth factor—the answer to whether Plaintiff ran the red light was necessary to support the DMV's valid and final judgment that he violated the Vehicle & Traffic Law.

The court also finds that Plaintiff had a full and fair opportunity to litigate this factual

question during the state administrative proceedings. The Second Circuit has phrased the inquiry

for this factor as follows:

> In determining whether a party had a full and fair opportunity to
> litigate the issue, . . . the various elements which make up the
> realities of litigation[] should be explored, including the size of the
> claim, the forum of the prior litigation, the use of initiative, the
> extent of the litigation, the competence and experience of counsel,
> the availability of new evidence, indications of a compromise
> verdict, differences in the applicable law and foreseeability of future
> litigation.

Curry v. City of Syracuse, 316 F.3d 324, 332 (2d Cir. 2003) (internal quotation marks omitted)

(quoting Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 734 (2d Cir. 2001)).

Plaintiff has failed to meet his burden of proving that he did not have a full and fair opportunity

to litigate this issue before the DMV. By all accounts, Plaintiff zealously litigated the First and

Second Summonses, efforts which included appearing before an administrative judge to contest

the citations, questioning and cross-examining Strauss, and appealing the determinations of guilt.

After reviewing the record, the court finds that Plaintiff appears to have received competent

counsel in his losing attempt to fight the Second Summons.[5] That Plaintiff represented himself

in the course of the First Hearing, meanwhile, does not, by itself, establish that he did not have a

full and fair opportunity to litigate the issue of whether he ran the red light at Atlantic Avenue

and the Service Road. See Goodson v. Sedlack, 212 F. Supp. 2d 255, 258 (S.D.N.Y. 2002)

("[T]he mere fact that the plaintiff proceeded pro se does not sufficiently establish that he was

denied a full and fair opportunity to be heard . . . ." (citation omitted)); cf. Palmer v. Goss, No.

02-CV-5804 (HB), 2003 WL 22519446, at *5 (S.D.N.Y. Nov. 5, 2003) (holding that a pro se

---

[5] While Plaintiff claims that he and Schotter did not meet until the Second Hearing, he has separately admitted that he and Schotter met prior to the Second Hearing numerous times to discuss his case. (See Defs. Mem. at 11 n.6.)

party was denied a full and fair opportunity to litigate his prior claim where he was "woefully unprepared to present his case and to counter the State's evidence").

Plaintiff's accusations that Strauss committed "perjury" do not upset this conclusion. For one, Plaintiff's allegations are baseless. Strauss states that his inconsistency on whether he pulled Plaintiff's car over at 111th Street or 115th Street was due to his having misspoken, a totally plausible rationale that Plaintiff nonsensically rejects. (See Pl. Mot. at 10.) Furthermore, whether Strauss pulled Plaintiff's car over at 111th Street or 115th Street is immaterial—the question of Plaintiff's guilt turned on whether he ran the red light. (See Defs. Mem. at 13.) Finally, even if Strauss had committed some sort of fraud that threw the soundness of the DMV's fact-finding into question, that claim needed to be addressed and remedied by a state court, not by this court on collateral review. See W & D Imps. v. Lia, No. 11-CV-4144 (SJF), 2013 WL 1750892, at *12 (E.D.N.Y. Apr. 22, 2013) ("The proper procedure for seeking relief from an order procured by fraud is to petition the rendering court to vacate the judgment. . . . As long as the state-court judgment remains in effect, it must be given preclusive effect, and the Court will not speculate as to whether the state court would vacate the judgment in light of the [defendants'] alleged perjury.").

While the court agrees with Defendants that Plaintiff is collaterally estopped from relitigating whether Strauss had probable cause to cite Plaintiff for violating the Vehicle & Traffic Law, the court does not agree that this finding mandates the dismissal of "each claim Plaintiff brings." (Defs. Mem. at 9; see id. at 10, 14.) The probable-cause finding is relevant to some, but not all, of Plaintiff's claims. The court will apply the collateral-estoppel effect of the probable-cause determination where necessary, but cannot condone Defendants' sweeping

19

statement that "collateral estoppel bars a finding that Plaintiff suffered <u>any</u> constitutional violation." (<u>Id.</u> at 14 (emphasis added).)

      2.    <u>Malicious Abuse of Process</u>

"In New York, a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." <u>Cook v. Sheldon</u>, 41 F.3d 73, 80 (2d Cir. 1994). A plaintiff asserting an abuse-of-process claim under § 1983 must also establish "the deprivation of a constitutional right." <u>Hoffman v. Town of Southampton</u>, 893 F. Supp. 2d 438, 446 (E.D.N.Y. 2012).

Like with his malicious-prosecution claim, Plaintiff seems to argue that it was an abuse of process for Strauss to issue the First and Second Summonses. (<u>See</u> Am. Compl. ¶ 90; Pl. Mot. at 13-14.) The court need not accept Defendants' contention that "traffic summonses do not constitute regularly issued process" (Defs. Mem. at 25) to find that Plaintiff's abuse-of process claim must be dismissed. <u>Cf. Crockett v. City of New York</u>, No. 11-CV-4378 (PKC), 2015 WL 5719737, at *10 (E.D.N.Y. Sept. 29, 2015) (collecting cases establishing that "the issuance-of-legal-process element [is] met by an officer's arrest of, or issuance of tickets to, a plaintiff, so long as the issuance was "for a collateral objective outside the legitimate ends of process" (quoting <u>Mangino v. Incorporated Village of Patchogue</u>, 739 F. Supp. 2d 205, 231 (E.D.N.Y. 2010))). Nor must the court decide whether probable cause is a complete defense to an abuse-of-process claim under New York law because it is an "excuse or justification," a question of "considerable confusion" within this circuit. <u>See Mangino v. Incorporated Village of Patchogue</u>, 808 F.3d 951, 958-59 (2d Cir. 2015).

Instead, Plaintiff's claim founders at the third element of the abuse-of-process test: whether Strauss issued the First and Second Summonses in order to obtain a collateral objective that is outside the legitimate ends of the process. "In evaluating this element, the Second Circuit expressly distinguishes between a 'malicious motive' and an 'improper purpose'; only the latter suffices to meet the 'collateral objective' prong of the abuse of process standard." Hoffman, 893 F. Supp. 2d at 448 (citing Savino v. City of New York, 331 F.3d 63, 77 (2d Cir. 2003)). Courts typically require a plaintiff bringing an abuse-of-process claim to show that the defendant initiated the process for the purpose of "extortion, blackmail, retribution, or [a] similar extraneous harmful goal." Brandon v. City of New York, 705 F. Supp. 2d 261, 275 (S.D.N.Y. 2010); see Peterson-Hagendorf v. City of New York, 146 F. Supp. 3d 483, 487 (E.D.N.Y. 2015). In other words, the defendant must have "aimed to achieve a collateral purpose beyond or in addition to" the process itself—in this case, citing Plaintiff for his violation of the Vehicle & Traffic Law. Hoffman, 893 F. Supp. 2d at 448 (emphasis added) (quoting Savino, 331 F.3d at 77).

Plaintiff has failed to allege that Strauss had a collateral purpose beyond issuing, and prevailing on, the First and Second Summonses. There is no evidence in the record that Strauss sought to pursue an improper purpose at any point during his interactions with Plaintiff. Plaintiff does not even allege such a thing; instead, in his amended complaint, he says that Strauss "undertook [his] conduct for no purpose other than to unlawfully intimidate and harass Plaintiff because Plaintiff dared to exercise his vested right to file a complaint to expose prior misconduct." (Am. Compl. ¶ 79.) Even if true—and, again, there is nothing in the record to suggest that it is—such a fact would only support an allegation that Strauss acted with a malicious motive, something that cannot, without evidence of an improper purpose, support an

abuse-of-process claim. See, e.g., Cabble v. City of New York, No. 04-CV-9413 (LTS), 2009 WL 890098, at *4 (S.D.N.Y. Mar. 30, 2009).

Because Plaintiff has not shown that Strauss acted with an improper purpose in charging him with violating the Vehicle & Traffic Law, his abuse-of-process claim fails.

### 3.    Equal Protection

"Proof that discriminatory intent was a motivating factor is required to show a violation of the Equal Protection Clause." Okin v. Vill. of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 438 (2d Cir. 2009) (citing Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265-66 (1977)). "[A] plaintiff seeking to establish a violation of equal protection by intentional discrimination may proceed . . . by pointing to a law that expressly classifies on the basis of race, a facially neutral law or policy that has been applied in an unlawfully discriminatory manner, or a facially neutral policy that has an adverse effect and that was motivated by discriminatory animus." Pyke v. Cuomo, 258 F.3d 107, 110 (2d Cir. 2001). "Because discriminatory intent is rarely susceptible to direct proof, a district court facing a question of discriminatory intent must make 'a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.'" Mhany Mgmt., Inc. v. County of Nassau, 819 F.3d 581, 606 (2d Cir. 2016) (quoting Village of Arlington Heights, 429 U.S. at 267).

Liberally construed, Plaintiff's pleadings allege that Strauss twice discriminated against him "on the basis of [Plaintiff's] foreign ethnicity, color, religion, and/or race" (Am. Compl. ¶ 2; see id. ¶ 87): First, during the First Encounter, when Strauss refused to disclose his identity to Plaintiff (id. ¶ 8; Pl. Mot. at 2, 12); and second, when Strauss issued the First and Second Summonses to Plaintiff (Am. Compl. ¶¶ 28, 49; Pl. Mot. at 2). The court agrees with Defendants that Plaintiff has made "no showing that Strauss issued traffic summonses to Plaintiff because of racial or religious discrimination." (Defs. Mem. at 19.) Plaintiff has not pointed to any facts—

22

beyond that he is "a colored, foreign-born citizen [and] a practicing Muslim" (Am. Compl. ¶ 13)—that would lead the court to conclude that he was treated differently by Strauss because of these characteristics, either during the First Encounter or during the issuance of the First and Second Summonses. His only argument on this point is that "any fair-minded juror would believe [Strauss] . . . discriminated against Plaintiff." (Pl. Mot. at 12.) This type of speculation cannot substitute for the evidence Plaintiff is required to marshal in support of his discrimination claim. See Traylor v. Hammond, 94 F. Supp. 3d 203, 215 (D. Conn. 2015); see also Chandrapaul v. City Univ. of N.Y., No 14-CV-790 (AMD), 2016 WL 1611468, at *23 (E.D.N.Y. Apr. 20, 2016) ("[A]llegations of discrimination under the Equal Protection Clause 'require that intentional discrimination be alleged in a non-conclusory fashion.'" (quoting Clyburn v. Shields, 33 F. App'x 552, 555 (2d Cir. 2002)). The court, having found no facts in the record that would support Plaintiff's claim of discrimination in violation of the Equal Protection Clause, grants summary judgment for Defendants on this claim.

### 4. First Amendment Retaliation

"[T]he First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech." Lozman v. City of Riviera Beach, 138 S. Ct. 1945, 1949 (2018). In order to state a claim for unlawful retaliation, a private-citizen plaintiff must show: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." Kuck v. Danaher, 600 F.3d 159, 168 (2d Cir. 2010) (quoting Curley v. Village of Suffern, 269 F.3d 65, 73 (2d Cir. 2001)). In cases involving criticism of public officials by private citizens, the plaintiff must show that that he suffered an "actual chill" in his speech as a result of the protected activity. Zherka v. Amicone, 634 F.3d 642, 645 (2d Cir. 2011); see Yuan v. Rivera, 48 F. Supp. 2d 335, 351

(S.D.N.Y. 1999) (holding that a plaintiff must show that the defendants actually chilled the exercise of his First Amendment rights where he "alleges that the prosecution was in retaliation for [his] exercise of First Amendment rights, notwithstanding the fact that probable cause for the prosecution is established").

Plaintiff claims that his "constitutionally protected right to bring a complaint was impermissibly chilled by [Strauss,] who intentionally retaliated" against Plaintiff's threatened complaint following the First Encounter, "and subsequently issued two back-to-back traffic summons[es]." (Pl. Mot. at 6; see id. at 12-13.) Defendants respond that Plaintiff's claim is barred by the finding of probable cause, and that Plaintiff cannot show that Defendant's actions actually chilled the exercise of his right to free speech. (Defs. Mem. at 23-24.) The court need not decide the first question—whether the finding of probable cause in this case serves as an absolute bar to Plaintiff's retaliation claim[6]—because it is clear that Plaintiff cannot meet the third retaliation requirement.

Plaintiff's claim of retaliation fails because he "cannot show that his speech was either silenced or chilled—i.e., that his right to free speech was actually violated." Williams v. Town of Greenburgh, 535 F.3d 71, 78 (2d Cir. 2008). During the First Encounter, Plaintiff told Strauss that he wanted to file a complaint against him. (Defs. 56.1 ¶ 31.) He stated the same thing after Strauss issued the First Summons. (Id. ¶ 78.) While Plaintiff did not file a complaint against Strauss in conjunction with the First Encounter or the First Summons, he did file a complaint

---

[6] The Second Circuit has long held that the existence of probable cause is a complete defense to a First Amendment retaliation claim. See, e.g. Fabrikant v. French, 691 F.3d 193, 215 (2d Cir. 2012). The Supreme Court recently held, however, that it is an open question whether a civil claim for retaliatory arrest may lie against an individual officer, even if there was probable cause for the arrest, if "the alleged constitutional violation was a but-for cause" of the arrest. Lozman, 138 S. Ct. at 1952-54 (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 285-87 (1977)); Higginbotham v. Sylvester, — F. App'x —, 2018 WL 3559116, at *2 (2d Cir. July 25, 2018) (summary order). While the court assumes that the Second Circuit's probable-cause defense will continue to apply in cases such as this one—where a plaintiff alleges he was issued a civil citation supported by probable cause—the court will not wade into this potentially thorny issue without needing to do so.

against Strauss after the issuance of the Second Summons. (See id. ¶¶ 33, 130.) Plaintiff cannot show that either of the actions taken against him by Strauss actually chilled his right to express his opinion about Strauss, and he does not attempt to argue to the contrary. "Without allegations of even one example in which [Plaintiff] desired to exercise his First Amendment rights but was chilled by [D]efendants' alleged actions," his First Amendment retaliation claim must be dismissed. Fernandes v. Moran, No. 17-CV-3430 (ADS), 2018 WL 2103206, at *7 (E.D.N.Y. May 7, 2018) (alteration adopted) (internal quotation marks and citation omitted).

### 5. Other Claims

In a footnote, Defendants urge dismissal of Plaintiff's remaining federal claims. (See Defs. Mem. at 22 n.9.) The court agrees.

Plaintiff asserts a claim under the Sixth Amendment for violation of his rights "to a fair trial and impartial judge." (Am. Compl. ¶ 89.) As Defendants point out, the Sixth Amendment by its text only applies to "criminal prosecutions." (Defs. Mem. at 22 n.9 (quoting U.S. Const. Amend. VI).) See Turner v. Rogers, 564 U.S. 431, 441 (2011) ("[T]he Sixth Amendment does not govern civil cases."). Because Plaintiff was not criminally prosecuted, see supra Section III(D)(1)(a), the court dismisses his claims under the Sixth Amendment.

Plaintiff also claims that the City violated his Eighth Amendment right "to be free from unusual penalties." (Am. Compl. ¶ 89.) As set forth above, Plaintiff received a fine of $150 for the First Summons and $375 for the Second Summons, plus $176 in administrative surcharges. Even assuming that civil administrative penalties are subject to the Eighth Amendment prohibition against excessive fines, Plaintiff has not successfully shown that the fines he received were "grossly disproportionate to the gravity of the offense." N.Y. State Fed'n of Taxi Drivers, Inc. v. City of New York, 270 F. Supp. 2d 340, 343 (E.D.N.Y. 2003) (quoting United States v. Bajakajian, 524 U.S. 321, 333 (1998)); see Dubin v. County of Nassau, 277 F. Supp. 3d 366, 402

(E.D.N.Y. 2017) (collecting cases showing that "both federal and New York State courts have found that administrative and other civil penalties" are subject to the Excessive Fines Clause if the penalties "can only be explained as serving in part to punish" (quoting Austin v. United States, 509 U.S. 602, 610 (1993))). The minimum fine for the First Summons was $190 but the administrative law judge lowered the fine to $150 based on Plaintiff's "very good driving record." (1st Hrg. Tr. 11:23-25.) The DMV imposed a higher fine for the Second Summons because it was Plaintiff's second red-light violation in 18 months. (2d Hrg. Tr. 14:2-3.) In view of this set of facts, the court believes that the few hundred dollars in fines that Plaintiff received for his two low-level driving offenses was reasonable and accordingly dismisses Plaintiff's claims under the Eighth Amendment.

Finally, Plaintiff asserts a due-process claim under the Fifth and Fourteenth Amendments. (Am. Compl. ¶ 89.) Although Plaintiff does not specify how this deprivation supposedly occurred, the court reads this claim as referring to Plaintiff's allegations that Strauss lied both in issuing traffic citations and during his testimony before the DMV. Defendants argue that "these are the same allegations which underlie his Fourth Amendment malicious prosecution claim, [so] his substantive due process claim is duplicative and should be dismissed." (Defs. Mem. at 22 n.9.) Defendants' contention is not exactly correct: Plaintiff's malicious-prosecution claim was factually based on the issuance of the citations by Strauss; whether Strauss lied in the DMV hearings is relevant to the question of probable cause, which is a legal element of the cause of action. But an examination of the substance of Plaintiff's due-process claims still motivates their rejection. For one, Defendants are correct that Plaintiff's claim under the Fifth Amendment must be dismissed, as that amendment "solely governs the conduct of the federal government and federal employees." (Defs. Mem. at 22 n.9.) See, e.g., Pabon v. N.Y.C.

Transit Auth., 703 F. Supp. 2d 188, 198-99 (E.D.N.Y. 2010). Meanwhile, "it violates due process under the Fourteenth Amendment for a government official to give false testimony in a state court proceeding." Velez v. Reynolds, 325 F. Supp. 2d 293, 316 (S.D.N.Y. 2004) (citing Napue v. Illinois, 360 U.S. 264, 270 (1959)); see United States ex rel. Washington v. Vincent, 525 F.2d 262, 267 (2d Cir. 1975). As discussed above, there is no legal basis to support the contention that Strauss lied during his testimony before the DMV leading to a deprivation of Plaintiff's right to due process. Finally, insofar as Plaintiff's due-process claim is construed to allege harms stemming from Strauss's citing Plaintiff for his red-light violations, such a claim would indeed impermissibly overlap with Plaintiff's malicious-prosecution claim. Cf., e.g., Osuna v. City of New York, No. 08-CV-4759 (JSR), 2009 WL 2356424, at *5 (S.D.N.Y. July 30, 2009) (dismissing due-process claim "as both duplicative and merit less" where it was "based on the same conduct that gave rise to plaintiff's now-dismissed false arrest and malicious prosecution claims").

### E.    § 1983 Claims – Municipal Liability

"[A] municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell, 436 U.S. at 691. Instead, municipalities are only liable under § 1983 for constitutional deprivations resulting from a governmental policy or custom. Id. at 694; see Lozman, 138 S. Ct. at 1951 ("[I]n a § 1983 case[,] a city or other local governmental entity cannot be subject to liability at all unless the harm was caused in the implementation of 'official municipal policy.'" (quoting Monell, 436 U.S. at 691)). A plaintiff may demonstrate that such a policy or custom exists by introducing evidence of one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although

not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policy makers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

Skates v. Incorporated Village of Freeport, 265 F. Supp. 3d 222, 235 (E.D.N.Y. 2017). A plaintiff bringing a Monell claim also must establish a causal connection between the municipality's official policy and the underlying constitutional violation. See City of Canton v. Harris, 489 U.S. 378, 385 (1989).

When a Monell claim relies on the theory that the municipality failed to "train certain employees about their legal duty to avoid violating [individuals'] rights," the plaintiff must show that the "municipality's failure to train its employees in a relevant respect . . . amount[ed] to 'deliberate indifference to the rights of persons with whom the [untrained employees] came into contact.'" Connick v. Thompson, 563 U.S. 51, 61 (2011) (quoting City of Canton, 489 U.S. at 388). Likewise, to prevail on a Monell claim based on the theory that the municipality failed to adequately supervise or discipline its employees (thereby implicitly encouraging or ratifying their unlawful conduct), a plaintiff must show that such a failure of supervision or discipline was tantamount to deliberate indifference. Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007) (citing Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 127 (2d Cir. 2004) (failure to supervise), and Berry v. City of Detroit, 25 F.3d 1342, 1354 (6th Cir. 1994) (failure to discipline)). In this context, "[d]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick, 563 U.S. at 61 (quoting Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997)).

Plaintiff asserts claims of municipal liability on two bases. First, Plaintiff makes a general allegation that Strauss's alleged misconduct "was consistent with an institutionalized

28

practice of the NYPD, which was known to and ratified by [the City] . . . , which at no time took any effective action to prevent police personnel from continuing to engage in such misconduct." (Am. Compl. ¶ 83.) Second, Plaintiff claims that the City "had prior notice of the vicious propensities of Defendant Strauss" but failed to train him, supervise him, or discipline him for "his unlawful use of authority." (Id. ¶ 84.) Defendants respond that all of Plaintiff's allegations of municipal liability must fail because he has not "establish[ed] that he suffered a denial of a constitutional right" and, even if he had, Plaintiff "cannot prove the existence of a municipal custom or policy that caused his alleged constitutional violation." (Defs. Mem. at 14-15.)

Defendants are correct that Plaintiff's claim fails for lack of any alleged constitutional injury. Because the court today dismisses all of Plaintiff's claims pursuant to § 1983, these incidents cannot support Plaintiff's Monell claim. See, e.g., Schultz v. Incorporated Village of Bellport, 479 F. App'x 358, 360 (2d Cir. 2012) (summary order) ("Because [the plaintiff] was unable to establish an underlying violation of his constitutional rights . . . , his . . . Monell claim necessarily fail[s] as well." (footnote omitted)). The court also finds that, even if Plaintiff did have viable claims under § 1983, he has not pleaded facts sufficient to establish a municipal policy leading to any constitutional injury. Accordingly, the court grants summary judgment for Defendants as to Plaintiff's claims of municipal liability.

  1. <u>Failure to Train</u>

To establish that a municipality acted with deliberate indifference for purposes of a failure-to-train claim, a plaintiff must meet three requirements:

> First, the plaintiff must show that a policymaker knows "to a moral certainty" that her employees will confront a given situation. Thus, a policymaker does not exhibit deliberate indifference by failing to train employees for rare or unforeseen events.

> Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or

> supervision will make less difficult or that there is a history of
> employees mishandling the situation. . . .
>
> Finally, the plaintiff must show that the wrong choice by the city
> employee will frequently cause the deprivation of a citizen's
> constitutional rights. Thus, municipal policymakers may
> appropriately concentrate training and supervision resources on
> those situations where employee misconduct is likely to deprive
> citizens of constitutional rights.

Alwan v. City of New York, 311 F. Supp. 3d 570, 578-79 (E.D.N.Y. 2018) (alteration in

original) (quoting Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992)). "To make

out such a claim, a plaintiff generally must also show that 'city policymakers [were] on actual or

constructive notice that a particular omission in their training program causes city employees to

violate citizens' constitutional rights' but nevertheless chose to retain the program." Id.

(alteration in original) (quoting Connick, 563 U.S. at 61-62). "Additionally, to prevail on a

failure-to-train claim, a plaintiff must 'identify a specific deficiency in the city's training

program and establish that that deficiency is closely related to the ultimate injury, such that it

actually caused the constitutional deprivation.'" Id. (quoting Wray v. City of New York, 490

F.3d 189, 196 (2d Cir. 2007)).

Plaintiff has not come close to meeting his burden of establishing that the City

unconstitutionally failed to train Strauss. The amended complaint says simply that, "[u]pon

information and belief, Defendants . . . had prior notice of the vicious propensities of Defendant

Strauss, but took no steps to train him." (Am. Compl. ¶ 84.) Plaintiff has not pointed to a

supposed omission in the City's training program, shown that the City was aware of that shortfall

but nevertheless chose to retain it, or connected any such problem to the harms he allegedly

suffered. This basic allegation, unsupported by a shred of evidence, is insufficient to survive

summary judgment.

## 2. Failure to Supervise or Discipline

"As with his failure-to-train theory, Plaintiff's failure-to-supervise and failure-to-discipline theories require him to establish that the City acted with deliberate indifference." Alwan, 311 F. Supp. 3d at 580. "To prove such deliberate indifference, the plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious." Id. (quoting Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995)). "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations . . . ." Id. (quoting Vann, 72 F.3d at 1049). "A plaintiff may also show deliberate indifference 'through expert testimony that a practice condoned by the defendant municipality was contrary to the practice of most police departments and was particularly dangerous because it presented an unusually high risk that constitutional rights would be violated.'" Id. at 581 n.2 (internal quotation marks omitted) (quoting Vann, 72 F.3d at 1049).

Plaintiff has not produced either form of evidence required to show the City's failure to supervise or discipline. Like with his failure-to-train claim, Plaintiff's allegations in the amended complaint are wholly lacking in specificity or support. (See Am. Compl. ¶¶ 84, 85(a).) Having gone through discovery, Plaintiff has not proffered evidence that there were repeated civil-rights complaints lodged against Strauss, nor does he put forth expert testimony regarding any of the City's policing practices. The court has only been made aware of one recorded prior complaint against Strauss: In 2007, a complaint was lodged against him "for failing to provide his name and badge number"; the allegation was investigated by the City's Civilian Complaint Review Board and dismissed as unfounded. (Defs. 56.1 ¶ 47.) Without more compelling evidentiary support than a single dismissed complaint alleging facts that, even if true, would probably not support liability under § 1983, Plaintiff's claim that the City failed to supervise or discipline Strauss must be dismissed.

31

3. Official Practice

Finally, Plaintiff claims that he suffered injury pursuant to an "institutionalized practice" of the NYPD, "known and ratified by" the City, that encouraged police misconduct. (Am. Compl. ¶ 83.) Plaintiff does not specify what this supposed practice is or how the City was aware of and encouraged it. Plaintiff's allegations are wholly conclusory and fall far short of the facts he would need to show that he suffered constitutional injury pursuant to a formal policy of the City. See Iocovangelo v. Corr. Med. Care, Inc., 624. F. App'x 10, 13-14 (2d Cir. 2015) (summary order). Plaintiff also fails to allege that there was a causal connection between the formal policy between that policy and the violation of his federally protected rights, a requirement for any claim of municipal liability. See Berry v. Village of Millbrook, 815 F. Supp. 2d 711, 719 (S.D.N.Y. 2011).

**F. Supplemental Jurisdiction**

Where a court dismisses all claims over which it has original jurisdiction, it may, in its discretion, decline to exercise supplemental jurisdiction over remaining claims. 42 U.S.C. § 1367(c)(3). "[W]here, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." Klein & Co. Futures, Inc. v. Bd. of Trade, 464 F.3d 255, 262 (2d Cir. 2006); see Cobbs v. CBS Broadcasting Inc., No. 97-CV-8284 (MBM), 1999 WL 244099, at *8 (S.D.N.Y. Apr. 26, 1999) ("When federal claims are dismissed early in the litigation—for example, before trial on a summary judgment motion—dismissal of state law claim[s] . . . is appropriate." (emphasis added)). Although courts more often decline to exercise supplemental jurisdiction when all federal claims are dismissed pursuant to a motion to dismiss, rather than a motion for summary judgment, the court finds that declination is appropriate in this circumstance given that the court's first review of the merits of Plaintiff's amended complaint comes at the summary-

judgment stage. See Marom v. Town of Hempstead, No. 14-CV-3005 (SJF), 2017 WL 5495808, at *7 (E.D.N.Y. Mar. 22, 2017).

Because the court has dismissed all federal-law claims asserted by Plaintiff, it declines to exercise supplemental jurisdiction over any potential state-law claims asserted in his amended complaint.

## IV. CONCLUSION

The court GRANTS Defendants' motion for summary judgment (Dkt. 80) and DENIES Plaintiff's motion for summary judgment (Dkt. 58). The court also DENIES Plaintiff's appeal from Judge Tiscione's August 21, 2017, order (Dkt. 76). The Clerk of Court is respectfully DIRECTED to enter judgment and close the case. The Clerk of Court is further respectfully DIRECTED to send a copy of this memorandum and order to pro se Plaintiff at his address of record by certified mail, return receipt requested.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      August 20, 2018

NICHOLAS G. GARAUFIS
United States District Judge